AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

DISTRICT OF __MASSACHUSETTS__

UNITED STATES OF AMERICA

V.

KIMBERLY A. DELSIGNORE
DOB: April 9, 1984

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 2004 M 0553 RBC

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __December 1, 2004__ in __Essex__ county, in the _____ District of __Massachusetts__ defendant(s) did, (Track Statutory Language of Offense)

by force and violence, and by intimidation, take from the person and presence of others, money belonging to and in the care, custody, control, management and possession of the East Boston Savings Bank, 320 Central Street, Saugus, Massachusetts, the deposits of which were then insured by the Federal Deposit Insurance Corporation

in violation of Title __18__ United States Code, Section(s) __2113(a) and 2__.

I further state that I am a(n) __Special Agent, FBI__ and that this complaint is based on the following
Official Title

facts:

see attached affidavit of Forrest G. Schoening

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

_____
Signature of Complainant
FORREST G. SCHOENING
Special Agent, FBI

Sworn to before me and subscribed in my presence,

DEC 16 2004 at 4:28 pm   at   Boston, MA
Date                                              City and State

ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## **AFFIDAVIT**

I, Forrest G. Schoening, having been duly sworn, do hereby depose and say, that:

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed for approximately two and one-half years. I have been involved in numerous investigations involving bank robberies and other violent crimes. I have been assigned to the Boston Division of the FBI for the past two years, and am currently assigned to the Boston Violent Crime Task Force (the "task force"), which is comprised of personnel of the FBI, the Massachusetts State Police, and the Boston and Cambridge Police Departments.

2. I am aware that Title 18 of the United States Code, Section 2113(a), makes it a crime for anyone to use force and violence, or intimidation, to take money belonging to or in the care, custody, control, management, or possession of any federally insured bank. Having so said, I make this affidavit in support of criminal complaintS charging Robert D. Arnold and Kimberly A. Delsignore with the robbery of the East Boston Savings Bank (the "bank") located at 320 Central Street, Saugus, Massachusetts, on Wednesday, December 1, 2004, at approximately 1:00 pm.

3. The facts stated herein are based on my own personal involvement in this investigation, and my discussions with, and review of the reports of other law enforcement officers also

involved in the investigation. In submitting this affidavit, however, I have not included each and every fact known to me about the investigation, but only those facts which I believe are sufficient to establish the requisite probable cause.

4. As part of the investigation of the robbery of the East Boston Savings Bank, at 320 Central Street, Saugus, Massachusetts which occurred on December 1, 2004, I interviewed the victim teller and several witnesses, and learned the following:

a) An audit conducted by bank officials after the robbery revealed that the loss from the robbery totaled three thousand, seven hundred, and eighty five dollars ($3785).

b) The victim teller indicated that on December 1, 2004 at approximately 1:00 pm an unknown white male entered the bank through the front door, approached her teller station, and stated: "I want your register." The teller did not understand what the male wanted and replied: "What?" The male then stated "I want all your money with no dye-pack. Give me all your money." As the robber made this statement to the teller, he removed a white, plastic bag from the pocket of his sweatshirt. The teller opened her drawer and began to remove money. As she was removing the money from her drawer, the teller activated the bank security cameras, using a switch inside her drawer. While the teller was doing this, the robber stated: "Hundreds, fifties, and

twenties" and "Hurry up." The teller handed the money she removed, along with a dye-pack, to the robber. The robber took the money and dye-pack, and placed it into his plastic bag. The robber then asked the teller for the money in her second drawer. The teller told the robber that she did not have a second drawer and further stated: "That's all I have." The robber leaned over the counter and, looking in the teller's drawer, observed more money still in the drawer. The robber then stated: "I want that." The teller removed the rest of the money from her drawer and gave it to the robber. The robber placed the rest of the money in his plastic bag, stated: "Thank you miss", and left the bank through the side door. Approximately twenty minutes after the robber fled, officers with the Saugus Police Department brought a male, in custody, to the bank. The victim teller looked at the male and recognized the male as the person who had just robbed her.

c) A second bank employee, who was also present in the bank during the robbery, indicated that an unknown white male entered the bank through the front door and approached the teller counter. This employee overheard the male asking one of the tellers for money. Based on her experience, this employee felt that the male was robbing the bank and so she activated the bank's alarm system and alerted another

3

employee of her suspicion. This employee then overheard the robber asking the teller for more money. This employee observed the robber flee the bank through the side door. This employee went to the window, and observed the robber flee across Jasper Street, into a parking lot behind the Hammersmith Restaurant, located at 330 Central Street, Saugus, Massachusetts. This employee observed that the dye-pack provided to the robber by the victim teller exploded while the robber was in the back parking lot of the restaurant. The robber threw the bag containing the dye-pack and robbery money down in the parking lot and continued to flee. This employee then momentarily lost sight of the robber. This employee ran out in front of the bank to Central Street with another employee. While in front of the bank, this employee observed a vehicle drive past the bank on Central Street. When the vehicle drove past, this employee recorded the make, model, and license plate of the vehicle because this employee recognized the passenger of the vehicle to be the robber. The robber was hunched down in his seat as if to avoid detection. This employee observed an unknown white female, possibly wearing a blond wig, driving the vehicle. This employee then reported the vehicle information to the police department. The Saugus Police Department later brought back a white male and

female, in custody, whom this employee observed and recognized as the robber and the driver of the getaway car.

d)  A customer leaving the Hammersmith Restaurant was in her vehicle, parked in the back parking lot of the restaurant at the time of the robbery.  The customer observed someone in a vehicle behind her throw a bag out of their vehicle.  The customer's vehicle was parked facing away from the back of the restaurant so the customer's observations were made through her rear-view mirror.  The customer observed the passenger door of the vehicle behind her open, observed the bag being thrown out, and observed red smoke coming from the bag.  The customer did not see which way the vehicle drove after the bag was thrown out.  The customer did not observe any specific characteristics or descriptions of the occupants of the vehicle from which the bag was thrown.  The customer then ran in the restaurant and alerted restaurant employees of the smoking bag.  The customer returned to the back parking lot with a restaurant employee and looked in the bag and observed that it contained money.

e)  A restaurant employee who was working at the time of the robbery was alerted by the customer regarding the smoking bag in the restaurant's back parking lot.  The employee accompanied the customer to the back parking lot where he observed the bag.  The customer and the restaurant employee

looked in the bag and the restaurant employee observed money, in denominations of $100 and $20. The restaurant employee believed, based on his observations, that the money was the result of a bank robbery. The restaurant employee brought the bag containing the money into the restaurant and placed it into a sink in the back of the restaurant. The restaurant employee then notified the police department about the bag and money, and turned them over to responding police officers.

5. As part of the investigation of this robbery, I also reviewed several Massachusetts State Police and Saugus Police Department reports, and learned the following:

a) Shortly after the bank robbery, the Saugus Police Department received a 911 call from one of the bank employees. The bank employee advised the police department that the bank had just been robbed, and provided additional information to include the robber's description, the getaway driver's description, and the license plate number of the vehicle in which the driver and robber fled after the robbery. The license plate number that the bank employee reported to the Saugus Police Department was Massachusetts registration 14MP23. Massachusetts registration 14MP23 is registered to Cheryl Carroll, residing at 78 Forest Street, Wakefield, Massachusetts. The vehicle is listed as a 2004,

Pontiac Sunfire. The bank employee advised the Saugus Police Department that the vehicle ("MA 14MP23") fled in the direction of Saugus Center. The Saugus Police Department broadcast this and other information to surrounding cities and towns over the police radio network.

b) Saugus Police Officers responding to the bank robbery recovered a white, plastic bag containing $3784 in dye stained money and an expended dye-pack that had been recovered as described above from the rear of the Hammersmith Restaurant.

c) Sometime after the Saugus Police Department broadcast the bank robbery information over the police radio network, the Massachusetts State Police advised the Saugus Police Department that a trooper was traveling southbound on Route 1, and was behind MA 14MP23. The Saugus Police Department responded, and officers from both agencies stopped MA 14MP23. A white female was driving MA 14MP23, and a white male was in the passenger seat. Both occupants of MA 14MP23 were arrested and transported back to the bank, where bank employees identified them as the robber and getaway car driver. Both individuals were then transported to the Massachusetts State Police barracks in Danvers, Massachusetts where they were booked and identified further as Robert D. Arnold and Kimberly A. Delsignore. Arnold and

Delsignore were then transported to the Saugus Police Department where they were again booked by that department.

7. When Arnold and Delsignore were stopped and arrested, Arnold was wearing a black, paint and dye stained, Addidas hooded sweatshirt. This sweatshirt was seized as possible evidence relating to the bank robbery. I later received a videotape and recordable CD-Rom (CD-R) containing surveillance camera footage from the bank. Photographs were produced from the video tape and CD-R. I have reviewed the photographs from the video tape. There are medium quality photographs of the robber and his face. The robber is wearing a dark, hooded sweatshirt. The sweatshirt seized from Arnold's car, which has the word "Addidas" on its front, looks identical to the dark colored hooded sweatshirt visible in the bank surveillance photos of the robber, in which the word "Addidas" is also visible.

8. I, along with a detective from the Saugus Police Department, interviewed Delsignore subsequent to her arrest and booking. Delsignore was advised of her Miranda Rights on at least two occasions during her booking, waived those rights, and was then interviewed. She reported as follows. Delsignore currently resides with her boyfriend, Thomas Carroll, and Robert Arnold at 220 Central Street, Stoneham, Massachusetts. Delsignore met Arnold while enrolled in a drug detoxification program, and has known Arnold for approximately one to one and

one-half months.  Delsignore, Arnold, and Carroll are all addicted to heroin.  Delsignore, Arnold, and Carroll often purchase heroin together or for each other.  Arnold is not currently employed but usually has money to purchase heroin. Delsignore and Arnold left their residence at approximately 12:00 pm on Wednesday, December 1, 2004.  Delsignore intended to visit a friend who owed her money.  Arnold asked Delsignore to take him somewhere specific while they were driving, and gave Delsignore verbal directions.  When they reached Arnold's intended location, Arnold asked Delsignore to park the car, got out of the car, and told Delsignore that he would be right back.  Delsignore estimated that Arnold was gone for approximately five minutes. Delsignore initially stated that when Arnold returned to the car, she observed red dye on his sweatshirt, and assumed that Arnold had just robbed a bank.  Delsignore later stated that the dye-pack exploded after Arnold had re-entered the car.  Arnold threw a white bag containing the dye-pack out of the car, and Delsignore drove away.  As she drove away, Delsignore's eyes were stinging, and Arnold was breathing heavily.  Delsignore continued to drive until stopped by police.  Although Arnold told Delsignore that he was going to rob a bank a few days prior, Delsignore stated that she did not know that Arnold was specifically planning on robbing a bank that day when they left their residence.  Delsignore was unsure if he was joking when he

9

made the statement but did believe he was capable of robbing a bank based on her knowledge of Arnold's past criminal history, which includes a prior federal conviction for bank robbery.

9. I, along with a detective from the Saugus Police Department, attempted to interview Robert Arnold subsequent to his arrest and booking. Arnold declined to be interviewed.

10. Based on my knowledge from previous bank robbery investigations involving the East Boston Savings Bank, I know that the bank is insured by the Federal Deposit Insurance Corporation ("FDIC"). I further know that the FDIC number issued to the East Boston Savings Bank is 33510, and that the number was issued by the FDIC on September 1, 1991.

11. Based on the foregoing, I believe that there is probable cause to believe that on Wednesday, December 1, 2004, Robert D. Arnold and Kimberly A. Delsignore, by force and violence, or by intimidation, took from the person and presence of employees of the East Boston Savings Bank, located at 320 Central Street, Saugus, Massachusetts, money belonging to and in the custody, control, management, and possession of the East

Boston Savings Bank, a federally insured institution, in violation of 18 U.S.C. §§ 2113 (a) and 2.

                                                Forrest G. Schoening
                                                Special Agent, FBI

Subscribed and sworn to before me this 16th day of December 2004.

                                                ROBERT B. COLLINGS
                                                United States Magistrate Judge